# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**13-149**


**DIANNE DENLEY, ET AL.**

**VERSUS**

**SHERRI B. BERLIN, ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIRST JUDICIAL DISTRICT COURT
PARISH OF CADDO, NO. 536,162
HONORABLE ROY L. BRUN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**PHYLLIS M. KEATY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of J. David Painter, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.


**AFFIRMED.**

**Dianne Hill**
**Attorney at Law**
**130 Desiard, Suite 501**
**Monroe, Louisiana  71201**
**(318) 325-6398**
**Counsel for Plaintiff/Appellant:**
    **Dianne Denley**

**Thomas A. Bordelon**
**Attorney at Law**
**9335 Ellerbe Road**
**Shreveport, Louisiana  71106**
**(318) 865-9201**
**Counsel for Defendant/Appellee:**
    **State Farm Mutual Automobile Insurance Company**

**KEATY, Judge.**

Dianne Denley (Denley), who filed suit on behalf of her minor child, Andrea Stewart (Stewart) (sometimes collectively referred to as Plaintiff), appeals a judgment rendered by the trial court in favor of State Farm Mutual Automobile Insurance Company (State Farm), finding that Stewart was not injured in an automobile accident. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This lawsuit was filed by Denley in Caddo Parish[1] on behalf of her minor child, Stewart, for injuries allegedly suffered in a motor vehicle accident which occurred in Shreveport on December 7, 2008. Stewart, who was fifteen years old at the time of the accident, was a passenger in a vehicle driven by one of her high school friends, Virginia Pullen (Pullen). Their vehicle was struck from behind by a vehicle, which was insured by Shelter Mutual Insurance Company (Shelter) and driven by Sherri Berlin (Berlin). Plaintiff filed suit against Berlin and Shelter as well as Pullen and her insurance company, Safeway Insurance Company of Louisiana (Safeway). Pullen and Safeway were ultimately dismissed via motion for summary judgment based on lack of liability. Subsequently, Shelter paid its $25,000 policy limits in exchange for the release of Shelter and its insured. At the time, Plaintiff had a liability insurance policy through State Farm, which also paid her $10,000 in medical payments. Plaintiff, therefore, has received $35,000 in total payments. The only remaining Defendant at the time of trial was State Farm in its capacity as the uninsured motorist carrier for Plaintiff. State Farm's policy provided uninsured motorist coverage in the amount of $100,000. The payment of

---

[1] The Louisiana Supreme Court transferred this case to the Third Circuit Court of Appeal for consideration after all of the judges of the Second Circuit Court of Appeal were recused.

Shelter's $25,000 policy limits, State Farm's $10,000 medical payments coverage, and liability were stipulated to by the parties at trial.

The case went to trial on April 4, 2012. Finding that the testimonies of Stewart and Denley were not credible and that their testimonies were inconsistent and/or contradicted by other evidence, the trial court found in favor of State Farm, dismissing Plaintiff's claims at her cost.

Plaintiff is now before this court asserting that it was error to find that there was no evidence that Stewart was injured in the automobile accident of December 7, 2008, and that the witness fee award was excessive.

## DISCUSSION

### I. <u>Causation</u>

After trial on the merits, the trial court ruled that it "was unable to say more likely than not" that Stewart had any injuries in the accident. This conclusion was based upon a finding that Stewart and Denley were "somewhat deceptive" and lacked credibility. Plaintiff contends that the trial court's finding that Stewart incurred no injuries in the automobile accident is not supported by the record and is manifestly erroneous. Plaintiff contends that the trial court's credibility determinations, particularly with regard to the testimonies of Dr. Milan Mody (Dr. Mody), Pullen, and Stewart, as well as the trial court's disregard of the medical records and billing statements, are so unreasonable in light of the entire record that they warrant reversal.

In opposition, State Farm contends that Plaintiff did not provide sufficient objective proof that Stewart suffered injury or that medical expenses incurred were necessary and/or related to this minor accident. State Farm contends that Plaintiff failed to prove that her case was worth in excess of $35,000 and that the judgment

2

of the trial court should be affirmed. State Farm alleges that both the objective evidence and the testimonies by witnesses presented at trial are inconsistent with Plaintiff's claims of injury after a minor rear-end accident. State Farm also claims that Stewart was not truthful about any injuries she may have suffered and that the trial court found her and Denley to lack credibility.

In *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (citations omitted), the supreme court discussed the pertinent standard of review with respect to the instant case:

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the findings in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong.

> When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bears so heavily on the listener's understanding and belief in what is said.

Additionally, the supreme court in *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603, 94-2615, p. 3 (La. 2/20/95), 650 So.2d 757, 759, noted:

> In a personal injury suit, plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. *American Motorist Insurance Co. v. American Rent-All, Inc.*, 579 So.2d 429 (La.1991); *Aucoin v. State Farm Mut. Auto. Ins. Co.*, 505 So.2d 993 (La.App. 3d Cir.1987); *Richard v. Walgreen's Louisiana Co.*, 476 So.2d 1150 (La.App. 3d

Cir.1985). Plaintiff must prove causation by a preponderance of the evidence. *Morris v. Orleans Parish School Bd.*, 553 So.2d 427 (La.1989). The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. *Mart v. Hill*, 505 So.2d 1120 (La.1987); *Villavaso v. State Farm Mut. Auto. Ins. Co.*, 424 So.2d 536 (La.App. 4th Cir.1982).

In the present case, Plaintiff had the burden of proving both that Stewart was injured in this accident and that the medical expenses for which Plaintiff was seeking recovery were related to the motor vehicle accident. Based upon our review of the trial transcript, the evidence presented at trial fell short of reaching this burden. Plaintiff called only one treating physician to testify regarding the alleged injuries suffered as a result of this accident. This witness, Dr. Mody, only saw Stewart a few times after the accident. Most of the treatment that Plaintiff claimed was incurred as a result of this accident was provided for by other providers, including Dr. Lynne Holladay, The Orthopedic Clinic, Cornerstone Rehabilitation, and Dr. Richard Barton. None of these providers were called as witnesses to testify as to the treatment or diagnoses they may have rendered as a result of Stewart's alleged injuries. Additionally, none of these medical records, including those of Dr. Mody, were placed into evidence by Plaintiff. Plaintiff, therefore, did not provide a causative link between the motor vehicle accident and the medical treatment and expenses for which she claims reimbursement.

In addition to the lack of objective evidence to support her case, Stewart's self-serving testimony was either not supported by objective evidence or was contradicted by other witnesses. For example, Stewart testified that the impact caused her to hit her head on the dashboard and her right knee on the glove box. This was contradicted both by the objective evidence and the testimony of Pullen.

Stewart testified that she was wearing a seatbelt with a shoulder harness at the time of the accident. The trial court noted in its oral reasons for judgment that it was "counterintuitive" for a belted passenger to strike the dashboard in a minor rear-end accident. Pullen testified that the impact was very minor. Pullen also claimed that she did not see or hear Stewart hit her head or knee on any objects inside the car and that Stewart never told Pullen that she hit her knee or her head on the dashboard. Stewart never complained of pain to Pullen at the time of the accident. Stewart also denied having pain immediately after the accident. The lack of complaints of pain was noted by the trial court, which recognized that injuries such as those described by Stewart would cause immediate pain or symptoms.

The trial transcript further indicates that Pullen testified that, after the accident, she and Stewart went to Denley's house. At that time, Denley asked if there was a ticket number or docket number "so she could do something." During that same conversation, Pullen testified that Denley mentioned that she wanted the police report because she could sue.

Stewart testified that as a result of her injuries, she was unable to play soccer that season or tennis for the rest of the year. Both Pullen and Denley, however, testified that Stewart did play varsity soccer. Pullen testified that she saw Stewart playing soccer later that season at Sport Port in Shreveport and that she played varsity soccer that spring. Denley also testified that Stewart continued playing soccer after the accident although she could only play the first game and would have to sit out the second game. Additionally, Pullen testified that Stewart played tennis and was a cheerleader post-accident.

Stewart's ability to play varsity sports is inconsistent with the injuries she claims to have suffered in the accident, and her testimony that she did not play

5

these sports seriously undermines her credibility. Stewart's credibility is important because the only testimony that sought to prove that she was injured was her own testimony. Dr. Mody, responding to a question by the trial court, admitted that there were no objective findings of injury. In fact, Stewart's complaints were so inconsistent with any objective findings that Dr. Mody ordered a CT of her abdomen because the objective testing "could not explain all her continued pain." The only diagnosis he could come up with was a lumbar strain. He testified that there was no permanent injury, and he would not expect any flare ups in the future. This testimony, the only disinterested medical testimony or evidence in the record, suggests that much of the medical treatment and expenses incurred by Stewart were unnecessary.

Accordingly, the trial court was not manifestly erroneous in concluding that Stewart did not suffer any injuries in the accident.

## II. Expert Witness Fee

Plaintiff called Dr. Mody as an expert witness. Plaintiff contends that Dr. Mody appeared for trial with no wait time. His testimony allegedly lasted less than twenty minutes. When asked his fee for testifying, Dr. Mody stated that his fee is set by his clinic at $7,500 a day in Caddo Parish. Despite Dr. Mody's requested fee for testifying, the court ultimately reduced his fee to $2,500. Plaintiff contends that the trial court's reduced fee is exorbitant considering the time and nature of his testimony. Plaintiff suggests that a maximum award of a $500 fee is sufficient for Dr. Mody's testimony.

The trial judge has great discretion in fixing and awarding costs and expert witness fees. *Broussard v. Martin Operating P'ship*, 11-1559 (La.App. 3 Cir. 11/21/12), 103 So.3d 713, *writs denied*, 13-215, 13-249 (La. 3/15/13), 109 So.3d

383. Accordingly, we find no error in the trial court's award of $2,500 in expert witness fees.

## DECREE

The judgment rendered by the trial court in favor of State Farm Mutual Automobile Insurance Company is affirmed. All costs of this appeal are assessed against Dianne Denley, on behalf of her minor child, Andrea Stewart.

**AFFIRMED.**