Judge Tiffany G. Chase
The Appellant, Jeremy Villavasso (hereinafter "Mr. Villavasso") brought suit against James Farwell (hereinafter "Mr. Farwell") and his insurer, Great Northern Insurance Company to recover for his personal injuries arising from a rear-end collision between the parties.[1] Following a bench trial in First City Court for the Parish of New Orleans, the trial court ruled in favor of Mr. Farwell, dismissing Mr. Villavasso's petition for damages with prejudice. This appeal followed, with Mr. Villavasso asserting ten assignments of error. After a thorough review of the record and finding that the trial court's ruling was not manifestly erroneous, we affirm the trial court.
FACTS
The facts of this July 8, 2015 accident are undisputed. Mr. Villavasso was rear-ended by Mr. Farwell near the intersection of Magazine Street and Jefferson Avenue in New Orleans. Just prior to the accident, a police officer was directing traffic at the intersection, allowing each lane of traffic to alternate every few minutes. Mr. Farwell was stopped behind Mr. Villavasso *1080 when Mr. Farwell's foot left the brake. Mr. Farwell's vehicle rolled into the back of Mr. Villavasso's vehicle. It is disputed as to whether Mr. Farwell made contact with Mr. Villavasso's vehicle once or hit it twice. No one disputes that Mr. Farwell was traveling less than five miles per hour when the accident occurred. After the accident, each party exited their vehicle and determined there was no property damage. At the accident scene, Mr. Villavasso indicated to Mr. Farwell and a police officer that he was not injured. Mr. Villavasso concedes that he did not experience any pain immediately after the accident. Within ten minutes of leaving the accident scene, Mr. Farwell received a call from an attorney representing Mr. Villavasso, notifying him that Mr. Villavasso intended to make a claim.
On August 23, 2015, six weeks after the July 8, 2015 accident, Mr. Villavasso was "T-boned" by another vehicle on Earhart Boulevard after another vehicle ran a red light. The parties agreed that the August accident was far more serious than the July accident. Mr. Villavasso alleges that he injured his neck and back in the August accident and sought treatment.
Mr. Villavasso filed suit, seeking to recover damages for four months of treatment for injuries to his back which he maintains he incurred as a result of the July accident. He began treatment in July 2015 but treated concurrently with the same doctor for both the July 2015 and August 2015 accidents. Mr. Villavasso was discharged from treatment for both accidents on November 19, 2015.
This matter proceeded to a one day bench trial on July 13, 2017. The parties stipulated that the vehicles made contact, with Mr. Farwell rear-ending Mr. Villavasso. At trial, Mr. Villavasso confirmed that he called his attorney immediately following the accident, before experiencing pain or seeing a doctor. During cross-examination, the defense attorney questioned Mr. Villavasso about approximately six prior accidents in which he successfully made claims. The record reflects that Mr. Villavasso admitted to making accident claims in September 2011; February 13, 2012; February 9, 2014; July 10, 2014; July 30, 2014; and then more recently on April 1, 2016. Mr. Villavasso testified that he injured his back in each of these accidents, including the July 8, 2015 accident. For many of these claims, Mr. Villavasso's attorney referred him to Dr. Gloria Kang of Health Care Center.
Mr. Villavasso's credibility was an issue at trial. Initially, he testified in his deposition, and at trial, that he voluntarily left his position at Capital One Bank. After being questioned, Mr. Villavasso admitted he was actually fired from Capital One Bank. Tyeshia Scott Boyd, Mr. Villavasso's former supervisor at Capital One Bank, testified at trial to contradict Mr. Villavasso's testimony. Ms. Boyd explained that Mr. Villavasso was fired because of frequent shortages in his register. At the conclusion of trial, the trial court took the matter under advisement. The trial court issued a judgment on July 18, 2017, in favor of Mr. Farwell and against Mr. Villavasso, along with extensive and well-reasoned reasons for judgment. The trial court dismissed all of Mr. Villavasso's claims with prejudice, noting a lack of objective evidence in the record to establish that he suffered damages as a result of this accident.
DISCUSSION
Mr. Villavasso asserts ten assignments of error on appeal; however, we find the sole issue before this Court is whether the trial court erred in determining that Mr. Villavasso failed to meet his burden of proof that the injuries to his back were a direct result of the July 8, 2015 accident, *1081 i.e. , did the plaintiff prove medical causation?
A trial court's finding of fact will not be set aside unless it is clearly wrong or manifestly erroneous. Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989). Great deference is afforded to the trier of fact's finding regarding credibility determinations, "for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." Id.
In a personal injury suit, plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. American Motorist Insurance Co. v. American Rent-All, Inc., 579 So.2d 429 (La.1991) ; Aucoin v. State Farm Mut. Auto. Ins. Co., 505 So.2d 993 (La.App. 3d Cir.1987) ; Richard v. Walgreen's Louisiana Co., 476 So.2d 1150 (La.App. 3d Cir.1985). Plaintiff must prove causation by a preponderance of the evidence. Morris v. Orleans Parish School Bd., 553 So.2d 427 (La.1989). The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Mart v. Hill, 505 So.2d 1120 (La.1987) ; Villavaso v. State Farm Mut. Auto. Ins. Co., 424 So.2d 536 (La.App. 4th Cir.1982). Maranto v. Goodyear Tire & Rubber Co. , 1994-2603, p.9 (La. 2/20/95), 650 So.2d 757, 759.
Maranto v. Goodyear Tire & Rubber Co. , 1994-2603, p.9 (La. 2/20/95), 650 So.2d 757, 759. As such, this Court must look at the objective medical evidence presented by Mr. Villavasso, along with the testimony presented at trial to determine whether the trial court committed manifest error in determining that Mr. Villavasso failed to prove medical causation, Urquhart v. Spencer , 2017-0069, p.12 (La.App. 4 Cir. 7/27/17), 224 So.3d 1022, 1031.
In the reasons for judgment, the trial court noted the lack of medical testimony offered to distinguish Mr. Villavasso's other injuries from the July 8, 2015 accident and his other back injuries, concluding that there was a lack of objective evidence in the record to establish he suffered damages as a result of the July accident. The trial court also determined that Mr. Villavasso's testimony, along with his reports of pain to Dr. Kang related to this accident, was not wholly credible, due to his lack of candor in other areas. These conclusions are well supported in the record before this Court. The key factors in the trial court's ruling related to the medical evidence and Mr. Villavasso's credibility.
Medical Evidence
In the trial court's reasons for judgment, the court indicated that Mr. Villavasso failed to meet his burden of proof to show that his back injury was caused by Mr. Farwell in the July 8, 2015 accident. The trial court specifically noted the lack of medical testimony offered to distinguish the injuries in this matter from his other back injuries. As such, the trial court found that Mr. Villavasso could not differentiate his injuries or prove that they were not the result of the accident that occurred on August 23, 2015, noting the accidents and injuries seemed to be concurrent. The trial court held that there was simply a lack of objective evidence.
At trial, medical records from Dr. Kang of Health Care Center were submitted as evidence by Mr. Villavasso, but no medical expert testimony was presented at trial. The medical records consisted of subjective complaints by Mr. Villavasso to Dr. Kang. Further, testimony revealed that *1082 Mr. Villavasso was involved in a more serious accident approximately six weeks after the July 8, 2015 accident. He underwent treatment for the July 2015 and August 2015 car accidents concurrently with Dr. Kang, beginning his treatment on July 13, 2015. A letter dated November 20, 2015, submitted into evidence from Dr. Kang, indicated Mr. Villavasso's symptoms from both the July 8 and August 23, 2015 accidents were resolved and she discharged him from her care on November 19, 2015, the date of his last visit. The medical records make no clear distinction between the treatment and injuries of the July 8, 2015 nor the August 23, 2015 accident.
Mr. Villavasso submits that his testimony and medical records were sufficient to establish causation. We disagree. Mr. Villavasso initially indicated he was not injured following the accident, but later sought treatment. On direct examination, Mr. Villavasso alleged that he injured his back on July 8, 2015 and again on August 23, 2015, but failed to elaborate further. In fact, Mr. Villavasso testified that he injured his back in every single car accident he was involved in prior to July 8, 2015. Mr. Villavasso alleged his back was also injured in the August 23, 2015 and April 1, 2016 accidents subsequent to the July 8, 2015 accident. He indicated, in his testimony, that his back pain would vacillate, feeling better some days and sometimes feeling worse, both prior to and following the July 8, 2015 accident. He also acknowledged that his back pain following this accident did not occur until several days later and admitted he could not connect this pain directly with the July 8, 2015 accident, as opposed to his prior accidents. Mr. Villavasso admitted the August 23, 2015 accident was far more serious, agreeing he injured both his neck and back as a result of it, but acknowledged the neck injury was solely attributable to the August 23, 2015 accident. Mr. Villavasso testified that all his symptoms from the accidents prior to July 8, 2015 had resolved but no objective medical records evidence was offered to demonstrate those injuries were fully healed prior to this accident. He admitted the trial court would need to believe his testimony that this particular accident caused new back pain to develop, which was different from the pain he suffered in the prior and subsequent accidents. However, he offered no additional testimony regarding his back pain. Further, the medical records presented consisted of subjective reports of pain to Dr. Kang, which she relied upon in prescribing treatment.
Illustrating the facts and evidence necessary to establish causation can be found in our decision in Urquhart v. Spencer, 224 So.3d 1022. In Urquhart , two plaintiffs were involved in a car accident. The plaintiffs submitted objective medical evidence and extensive testimony which established causation between the injury and subsequent treatment. Similar to the case sub judice , both plaintiffs in Urquhart suffered from various pre-existing conditions. Id. at 1026-27. However, unlike the case sub judice, the plaintiffs in Urquhart testified extensively regarding their previous injuries; when they healed from those previous injuries, including activities they resumed once they healed (prior to the car accident that was the subject of the litigation); and the limitations suffered as a result of the car accident.[2] The Urquhart plaintiffs submitted testimony of family members regarding the change in activity level and abilities following the car accident. In fact, one plaintiff provided expert medical testimony *1083 establishing causation, i.e., linking the need for the plaintiffs back surgery to the car accident subject to the litigation. Id. at 1026-27. In stark contrast to the evidence presented in Urquhart , Mr. Villavasso offered inadequate evidence establishing the July 8, 2015 accident caused his subsequent need for medical treatment.
In the case sub judice , the trial court found insufficient evidence presented that Mr. Villavasso's injuries were caused by the negligence of Mr. Farwell. As noted above, Mr. Villavasso offered limited medical evidence, had no medical expert or treating physician testimony and did not distinguish his injuries from the numerous automobile accidents he was involved in prior to, and after, the accident at issue. Therefore, we find the trial court's conclusion that Mr. Villavasso had not met his burden reasonable.
Credibility of Mr. Villavasso
In the trial court's reasons for judgment, it highlighted Mr. Villavasso's litigious nature together with his lack for truthfulness. False testimony is always a relevant credibility factor. Turner v. Cleveland Tr. Co. , 1995-2488, p.20 (La.App. 4 Cir. 5/22/96), 686 So.2d 871, 879-80, writ denied , 96-1531 (La. 9/27/96), 679 So.2d 1350.
The only evidence supporting Mr. Villavasso's claim for damages was his testimony, along with medical records submitted from Dr. Kang's office, which consisted of his subjective report of pain to Dr. Kang for treatment. Thus, Mr. Villavasso's credibility was paramount to the litigation. The trial court noted, and the record reflects, that Mr. Villavasso was admittedly less than truthful in his testimony regarding his termination from his former employer, an issue wholly unrelated to his claim for damages. When asked about his employment at Capital One Bank, Mr. Villavasso testified that he left voluntarily. After being repeatedly asked this question and being reminded that lack of candor on the stand was a serious offense, Mr. Villavasso finally admitted that he was fired. Ms. Boyd, his former supervisor, confirmed at trial that Mr. Villvasso was fired after being repeatedly warned about drawer shortages. This lack of candor was of major concern since the treatment Dr. Kang prescribed was based solely on the medical history provided by Mr. Villavasso. At trial, Mr. Farwell's counsel impeached Mr. Villavasso, pointing out he provided false testimony in his deposition and at court, bringing his credibility into question regarding his subjective complaints of back pain.
Mr. Villavasso's lack of candor during his testimony, coupled with inconsistent statements regarding his injuries, affected the trial court's findings regarding his credibility. The plaintiff's credibility, especially as to causation, was of great importance in this case, as it was in Turner v. Cleveland Tr. Co. Id. In Turner , this Court found that the plaintiff's credibility problems coupled with the lack of objective medical evidence resulted in the plaintiff's failure to demonstrate a causal connection between her fall and the injuries she sustained. Id. This Court found the trial court properly dismissed most of Turner's claims for subsequent injuries because she failed to link those injuries to her fall instead of her subsequent car accident. Id. at 879-80. Similarly, the plaintiff in Turner suffered additional injury in a car accident which occurred after her initial fall and treatment with a chiropractor. Id. at 874. While the plaintiff in Turner reported the fall to her neurosurgeon, she failed to tell him about the car accident she suffered after the fall, but prior to seeking treatment from him. Id. at 876. Due to this lack of candor, the trial court declined to accept her neurosurgeon's assessment regarding the causation of her injuries, which this Court upheld. Id. at 879. Most significantly, *1084 in Turner, the neurosurgeon admitted that "his determination of [medical] causation depends largely on the patient's credibility and what the patient relates to him." Id. In Turner, the plaintiff had the burden of establishing causation but failed to do so, as Mr. Villavasso has likewise failed to do so, by submitting medical evidence which relies largely on his subjective complaints of pain and hinges on his credibility. Id. at 879.
Mr. Farwell testified at trial that his vehicle rolled into the back of Mr. Villavasso's vehicle when he let his foot off the brake. He conclusively stated that he was traveling at less than five miles per hour. Mr. Farwell's testimony was that he made contact with Mr. Villavasso's vehicle only once, while Mr. Vilavasso maintained that his vehicle was impacted twice. The record reflects that the accident involved minimal impact and resulted in no property damage. Immediately after the accident, Mr. Villavasso advised he was not injured and testified he experienced no immediate pain following the accident. Mr. Villavasso testified that shortly after the accident, he contacted his attorney, whose office, according to Mr. Farwell's testimony, contacted him just ten minutes after he left the accident scene.[3] Mr. Villavasso acknowledged he was involved in no less than six car accidents in a very short period of time, all of which resulted in injuries to his back and claims for damages. Mr. Villavasso's inconsistent statements about his injury also contributed to the trial court's determination that he was not credible.
Mr. Villavasso contends that the trial court improperly relied upon his litigiousness in evaluating his credibility. The trial court specifically stated that Mr. Villavasso's litigiousness was not the sole basis for its finding, noting his lack of candor during his testimony coupled with his inconsistent statements about his injury created doubt. Further, the trial court rejected the findings of Dr. Kang as her diagnosis and treatment relied heavily upon Mr. Villavasso's subjective complaints of pain. We must give great deference to the findings of the trier of fact. Rosell, 549 So.2d 840 (La. 1989). Hence, we find nothing in the record to suggest that the trial court was manifestly erroneous by finding Mr. Villavasso failed to meet his burden of proof.
CONCLUSION
Accordingly, we find no error in the ruling of the trial court dismissing Mr. Villavasso's claim. For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRM
LOBRANO, J., CONCURS IN THE RESULT

Erroneously identified as Chubb Group of Insurance Companies in Mr. Villavasso's original petition.

Mr. Urquhart died prior to trial, but his deposition testimony was presented for the trial court.

Mr. Villavasso admitted he contacted his attorney prior to seeking any medical treatment.